No. 29,815.

THE McCANDLISS CONSTRUCTION COMPANY, *Appellee*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF NEOSHO, *Appellee;* THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellant.*

(296 Pac. 720.)

Opinion filed March 7, 1931.

*Wint Smith,* assistant attorney-general, and *Ralph M. Hope,* of Topeka, for the appellant; *Fred S. Jackson, James E. Smith* and *S. W. Jackson,* all of Topeka, of counsel.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Virgil V. Scholes* and *Margaret McGurnaghan,* all of Topeka, for the appellee.

*L. H. Cable,* county attorney, and *Hugo T. Wedell,* special counsel, for the board of county commissioners of Neosho county.

The opinion of the court was delivered by

HARVEY, J.: This action was brought in the district court of Shawnee county against the board of county commissioners of Neosho county and the state highway commission on a balance claimed to be due plaintiff under a contract entered into April 1, 1926, between plaintiff and the board of county commissioners of Neosho county for the grading and hard surfacing of a portion of a road in that county which was a part of the state highway

system. The board of county commissioners of Neosho county appeared specially and moved to quash the summons and to dismiss the action against it for the reason that the court of Shawnee county had no jurisdiction over it. This motion was considered by the court and sustained, and from that ruling the plaintiff has not appealed. The state highway commission appeared specially and moved the court to dismiss the action against it and to quash the service of summons for the reason that the action is one against the state and that the court had no jurisdiction. This motion was considered by the court and denied. The state highway commission then moved the court to dismiss the action against it and quash the service of summons for the reason that it was against public officials and arose in Neosho county and if brought at all must be brought in that county. This motion was considered by the court and overruled. Thereafter the state highway commission filed a demurrer to the petition on the ground (1) that the court had no jurisdiction of the person of the defendant or of the subject of the action, and (2) that the petition does not state facts sufficient to constitute a cause of action. This demurrer was considered by the court and overruled. The state highway commission has appealed from the order overruling its first motion to quash, also from the order overruling its second motion to quash, and from the order overruling its demurrer, and also from the order of the court sustaining the motion of the board of county commissioners of Neosho county to quash the service.

Appellant concedes that the rulings of the court on its motions to quash are not appealable orders (*Clingman v. Hill,* 104 Kan. 145, 178 Pac. 243; *Oil Co. v. Beutner,* 101 Kan. 505, 507, 167 Pac. 1061; *Reynolds v. Bank,* 66 Kan. 461, 71 Pac. 847) and presents the case here on its appeal from the judgment of the court overruling its demurrer to the petition.

Appellant argues that the suit against the state highway commission is a suit against the state of Kansas, and that the state has never consented to its being sued on the cause of action set forth in plaintiff's petition. Perhaps the first of these propositions is of but little importance, for, after all, the real question to be determined is, What are the liabilities of the state highway commission under the statute creating it? Our constitution, as amended at the general election in 1928 (sections 8 and 9 of article 11), authorizes

the state to construct and maintain a state system of highways, and gives the state power to levy special taxes for road and highway purposes on motor vehicles and on motor fuel. By chapter 225 of the Laws of 1929 the legislature "created a state highway commission which shall be a body corporate with powers to sue and be sued." It was required to have a common seal and to keep a record of its proceedings. It was required to lay out and establish highways in every county in the state, which highways, with bridges and culverts thereon, comprise the state highway system, which state highway system shall be constructed, improved and maintained by the state highway commission from funds provided by law. It was authorized to perform all work, or to enter into, perform, and require the performance of all contracts incident to the construction, improvement and maintenance of the state highway system. Funds for that purpose were provided. The act required that on April 1, 1929, the boards of county commissioners of various counties should transfer to the state highway commission all machinery, equipment and road material purchased from the county and state road funds for such counties for use on state highways, and "That on April 1, 1929, the state highway commission shall assume the rights and liabilities of the various counties on all existing contracts for the construction, improvement, reconstruction or maintenance of state highways and bridges and for the purchase of machinery, equipment or material for use on state highways." (§ 19.) One section of the act (§ 23) made the state highway commission liable for torts under certain circumstances. It is thus seen that the state highway commission is a quasi-corporate body created by statute to carry out these functions of the state, and of necessity has the duties and liabilities imposed upon it by statute.

If this action were pending in federal court and the jurisdiction of that court depended on diverse citizenship the question whether a suit against the state highway commission is a suit against the state would be important, for the reason that in such an action the state is not regarded as a citizen for the purpose of fixing the jurisdiction of the federal court. See decision of the federal district court in *Utah Const. Co. v. State Highway Commission*, 16 F. (2d) 322; also the same case where the judgment of the district court was reversed by the court of appeals, 23 F. (2d) 638; also the same case

where the judgment of the court of appeals was reversed by the supreme court of the United States, 278 U. S. 194, 73 L. Ed. 262, and cases cited therein. But that point is of no importance here. It is well settled that a state may consent to be sued, and to the extent that it does so consent suits may be maintained against it in the courts of such state. Naturally, with respect to matters concerning which the state has not consented to be sued, actions against the state cannot be maintained even in the state courts. (*Purity Oats Co. v. State,* 125 Kan. 558, 264 Pac. 740; *Construction Co. v. Board of Administration,* 105 Kan. 291, 182 Pac. 386.)

Here, the state, being authorized by the constitution to do so, has undertaken to construct and maintain a state system of highways and has provided funds for that purpose. In order to carry that work forward it has created a quasi-corporate body and given it the powers, duties and responsibilities necessary for that purpose, and with respect to such work and contracts made in relation thereto it has specifically authorized that unit of government to be sued; hence, if it be an action against the state, the state, by appropriate legislative action, has given its consent to the suit.

Appellant argues that since by section 23 of the act it is specifically provided that the state highway commission may be sued for torts under certain circumstances, this is the only class of suits which the legislature intended should be brought against the state highway commission. We regard that construction of the act as untenable. Liability on contract and in tort is quite distinct. Had section 23 not been in the act the state highway commission could have been sued on its contracts which it made, or by statute became liable for; but there could have been no action against the state highway commission for torts without a special provision such as section 23 being made therefor, and that was the obvious purpose of including section 23 in the act.

Appellant contends that in any event the state highway commission is liable only on *existing* contracts; that is, those existing on April 1, 1929, when, under the statute (Laws 1929, ch. 225) it took over the duties and liabilities of the county, and it is argued that plaintiff's cause of action is not based on a contract existing at that time for the reason that the petition discloses that the contract was entered into April 1, 1926, and that the last of the work required to be done by the contract was completed within the year

1927. The petition alleges, however, that the plaintiff was paid only 85 per cent of the engineer's estimate. This would leave a balance due plaintiff, in any event, of 15 per cent of the engineer's estimate; but plaintiff alleges that the engineer's estimate was inaccurate and was arbitrarily made, and that there is a much greater sum due him than the engineer's estimate discloses. The real question is, What is an "existing contract" within the meaning of the statute? Prior to the enactment of this statute there had been constitutional and statutory provisions for a state highway system, and work had been done, and was being done, by boards of county commissioners on that system at the time this statute went into effect. In some instances the steps to have the work done had been just started, others had progressed to various degrees of completeness, and in this one it seems the work itself had been completed, but the contract for it had not been fully complied with by payment of an amount, in effect conceded to be due, and of determining whether more was due under the contract, as plaintiff contended. We notice that the statute took from the counties which had previously been doing the work on the state highway system all of their tools, materials and funds for carrying on that work. The legislature certainly would not have done that and left the counties liable for unpaid portions of the contract price. In order to carry out the legislative purpose we find it necessary to hold that the term "existing contract," as used in the statute, included contracts on which the work had been performed, but payment had not been fully made. The contract itself necessarily existed until it was completed by settlement or payment, as well as by performance of work under it.

Appellant complains because the trial court sustained the motion of the board of county commissioners to quash the service and dismiss. A brief filed in this court on behalf of the board of county commissioners raises the point that the appellant is not in position to be heard on that question, since the plaintiff made no appeal from that ruling. Perhaps this point is well taken; but, passing it, it is clear the ruling was proper. The board of county commissioners of Neosho county and the state highway commission are in no sense jointly liable to plaintiff. The contract sued on was made between plaintiff and the board of county commissioners of Neosho county. The state highway commission was not a party to the contract. Originally the board of county commissioners of Neosho county

was the only party liable to plaintiff for the sums due him under the contract, but the legislature, by statute (Laws 1929, ch. 225), transferred that liability from the board of county commissioners of Neosho county to the state highway commission. As between the board of county commissioners of Neosho county and the state highway commission the former is relieved from any further liability to plaintiff, and any liability there is to him is now imposed upon the state highway commission. The board of county commissioners of Neosho county, as single defendant liable, could not be sued in Shawnee county, but if plaintiff sought liability from it, was entitled to be sued in its own county; hence, if the point is before us, there is no error in the ruling.

The judgment of the court below, overruling the demurrer of the state highway commission to plaintiff's petition, is affirmed.